UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 19-10044-RWZ

UNITED STATES OF AMERICA

v.

VASILY HARDY

ORDER

August 28, 2019

ZOBEL, S.D.J.

Defendant Vasily Hardy is charged in one count with being a felon in possession of a firearm and ammunition. 18 U.S.C. § 922(g)(1). He challenges the impoundment of his vehicle and moves to suppress the firearm and ammunition seized during the subsequent inventory search.

## I. Findings of Fact[1]

On November 14, 2018, at approximately 10:30 p.m., Wellesley Police Officer Travis Dixon (hereafter "Dixon") observed a vehicle commit a series of traffic violations on Route 9 in Wellesley, Massachusetts. He contacted the Wellesley Police Department ("WPD") to run the license plate and learned that the car was registered to defendant and that defendant's license had been suspended. Dixon activated his police lights and defendant immediately pulled over into a metered parking space on Washington Street in Newton, Massachusetts.

---

[1] The court held an evidentiary hearing on August 14, 2019, at which Officers Travis Dixon and Matthew Wall testified. Docket # 43.

Dixon approached the vehicle and asked for defendant's identification. The defendant was alone in the car. Dixon then learned via radio dispatch that there was an active warrant for defendant from Lowell District Court. Meanwhile, WPD Officer Matthew Wall (hereafter "Wall") overheard the radio transmissions regarding the traffic stop and arrived at the scene.

While defendant waited in his car, the two officers spoke briefly and decided to arrest defendant for the active warrant and for driving with a suspended license. Dixon called for a tow truck to impound defendant's vehicle. The officers arrested defendant and placed him in Wall's police cruiser. Wall drove defendant to the Wellesley Police station while Dixon remained at the scene. From the backseat of the cruiser, defendant asked, "What happens with my vehicle?" Wall replied, "Your vehicle's going to be towed, sir." The defendant initially said, "Okay," but several seconds later asked, "Can you leave my car there so it doesn't have to get towed?" Wall responded, "No sir, we can't," and explained that Dixon would complete an inventory search of his vehicle prior to the tow. At no point did defendant suggest the name or availability of another person to take charge of the vehicle.

During Dixon's subsequent search of the car, he found a Sig Sauer semi-automatic pistol and sixteen rounds of ammunition inside a backpack in the backseat. He filled out the WPD "Motor Vehicle Inventory Form," listing these and other items found in the car. See Docket # 36-2. Sergeant Robert Gallagher (hereafter "Gallagher"), the shift supervisor, arrived on the scene where he photographed and collected the pistol and ammunition.

At the Wellesley Police station, defendant received his Miranda warnings twice, signed a Miranda warnings form, and agreed to speak with Dixon and Sergeant Gallagher. The defendant admitted that the vehicle, firearm, and ammunition were his.

## II. Legal Standard

"[T]he Constitution permits arresting officers to impound [without a warrant], pursuant to standard procedures, an arrested person's automobile that might otherwise be left abandoned." United States v. Ramos-Morales, 981 F.2d 625, 627 (1st Cir. 1992). This "community caretaking exception" to the Fourth Amendment's warrant requirement recognizes law enforcement's responsibility to protect a car from theft and vandalism and to remove vehicles that impede traffic or threaten public safety and convenience. United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006).

The decision to impound an arrestee's car must be reasonable under the circumstances and not driven by investigatory motives. "The reasonableness analysis does not hinge solely on any particular factor," but takes into account all of the facts and circumstances. Coccia, 446 F.3d at 239. In particular, courts consider the existence of and adherence to established criteria, such as written policy and/or standard routine. See also United States v. Sanchez, 535 F. Supp. 2d 216, 221 (D. Mass. 2008), aff'd, 612 F.3d 1 (1st Cir. 2010) ("The Supreme Court has emphasized the importance of standardized criteria or established routine ... the latter clause suggesting that the policy need not be in writing") (internal citations and quotation marks omitted).

When a vehicle is properly impounded, the police may conduct a warrantless inventory search of the vehicle, including any compartments or closed containers. The

3

purpose of an inventory search is to protect "the property of the owner …, the police from claims resulting from lost or stolen property, and the police and the public from dangerous instrumentalities stored inside." Colorado v. Bertine, 479 U.S. 367, 373 (1987). For an inventory search to be valid and the evidence discovered admissible, officers must adhere to standardized criteria and procedures. Florida v. Wells, 495 U.S. 1, 4 (1990).

III.    Discussion

Defendant challenges the initial impoundment of his vehicle and therefore argues that the fruits of the subsequent inventory search, including the firearm and ammunition, must be suppressed.[2]

WPD's written policy pertinently states:

> When the operator is arrested, and proposes that the vehicle be
> turned over to an identified person who is not under arrest or
> otherwise incapacitated and who agrees to take charge of the
> vehicle, the officer should allow such arrangement as an alternative
> to police tow provided he can verify that proposed operator is
> properly licensed. When the officer does not permit the third party
> to take charge of the vehicle, the reasons for ordering the tow shall
> be articulated in his/her report.

WPD Motor Vehicle Inventory Policy & Procedure No. 5.03, Docket # 36-1.

The written policy describes the protocol to be followed when an arrestee proposes an alternate driver, such as one at the scene or immediately nearby, to take control of the vehicle. When an arrestee is alone, however, Dixon and Travis testified

---

[2] Defendant does not challenge the inventory search itself or argue that it was not carried out pursuant to valid policies.

4

that it is WPD's general practice to tow the vehicle, especially if it is on a public road. This procedure reflects a reasonable approach to law enforcement's community caretaking role and the officers adhered to this protocol in defendant's case.

Defendant nonetheless complains that the officers failed to ask him if there was someone nearby to take charge of the vehicle. Defendant acknowledges that he was alone when he was stopped, but he states that three of his family members reside "less than a 30 minute drive" away from where he was arrested and, therefore, could have retrieved his car.[3]  Docket # 36 at 9.  But WPD's policy and practice plainly do not dictate that officers affirmatively inquire about the availability of a third-party driver.  Nor does the law impose such a requirement.  The First Circuit has clearly stated that "law enforcement officials are not required to give arrestees the opportunity to make arrangements for their vehicles when deciding whether impoundment is appropriate." Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003); see also Jaynes v. Mitchell, 824 F.3d 187, 197 (1st Cir. 2016) ("where a driver is arrested and there is no one immediately on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car") (emphasis added) (citation omitted).

Lastly, defendant argues that impoundment was unnecessary because his vehicle was in a designated parking spot, the parking meter was inactive at the time of his arrest, and thus, at worst, his car would have accrued parking tickets the next day.

---

[3] Even if the defendant identified a person to Dixon and Travis who could come to the scene to retrieve his vehicle, the officers need not have allowed such an arrangement. See e.g., United States v. Mensah, 796 F. Supp. 2d 265, 269 (D. Mass. 2011), aff'd, 737 F.3d 789 (1st Cir. 2013) (denying motion to suppress when officers did not permit defendant's girlfriend, who was at his residence a few blocks away, to claim the vehicle).

5

Yet officers may tow a vehicle despite the existence of "alternative means of dealing with the automobile, even less intrusive means." Boudreau v. Lussier, 901 F.3d 65, 72 (1st Cir. 2018) (quoting United States v. Rodríguez-Morales, 929 F.2d 780, 786 (1st Cir. 1991)).  Defendant's car was stopped on the side of a street after 10:30 p.m.  Dixon and Travis testified that they did not know nor could they control when defendant would be released from custody.  Nor did they know for certain whether defendant's car would be ticketed or eventually towed by the city if it remained where it was.  Under these circumstances, the decision to impound the vehicle was eminently reasonable.

IV. **Conclusion**

Defendant's motion to suppress (Docket # 36) is DENIED.

|  |  |
|---|---|
|     August 28, 2019 |     /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | SENIOR UNITED STATES DISTRICT JUDGE |